**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JOEL MARTINEZ,**

           **Plaintiff,**

**-vs-**                                            **Case No. 6:09-cv-799-Orl-28KRS**

**SECRETARY, DEPARTMENT OF HOMELAND SECURITY; DIRECTOR, CITIZENSHIP AND IMMIGRATION SERVICES; INTERIM FIELD OFFICE DIRECTOR, CITIZENSHIP AND IMMIGRATION SERVICES, TAMPA, FLORIDA; FIELD OFFICE DIRECTOR, CITIZENSHIP AND IMMIGRATION SERVICES, ORLANDO FLORIDA; ATTORNEY GENERAL, U.S. DEPARTMENT OF JUSTICE; and DIRECTOR, FEDERAL BUREAU OF INVESTIGATION,**

           **Defendants.**
_____

# ORDER

On March 7, 2007, Plaintiff Joel Martinez filed an application for naturalization with the United States Citizenship and Immigration Services ("USCIS"). As a part of the application process, USCIS conducted an oral examination of Plaintiff on July 30, 2008. On May 11, 2009—having received no decision from USCIS on his naturalization application—Plaintiff filed a Complaint in this court requesting a judicial ruling on his application for naturalization. Defendants now seek dismissal of the Complaint on mootness

grounds because USCIS denied Plaintiff's application on June 23, 2009.  (Mot. to Dismiss, Doc. 11).  In the alternative, Defendants request that the matter be remanded to USCIS for adjudication.  As explained below, the motion must be denied insofar as it seeks dismissal, but the motion is granted insofar as it seeks remand.

## Discussion

Congress has provided a detailed procedure for consideration of applications for naturalization.  A lawful permanent resident alien may be naturalized as a United States citizen if the resident alien meets a five-year residency requirement, has resided continuously in the United States from the date of his application for naturalization to the time of admission as a citizen, and is of good moral character.  See 8 U.S.C. § 1427(a).  The process commences with the filing of a Form N-400 application for naturalization.  Id. § 1445(a); 8 C.F.R. §§ 334.2 & 316.4.  Upon submission of the application,  USCIS conducts a background investigation of the applicant, including a review of all pertinent immigration and police records.  8 U.S.C. § 1446(a); 8 C.F.R. § 335.1.  Next, the applicant is interviewed by an examiner who is authorized to grant or deny the application and who "shall" make the decision whether to grant or deny the application within 120 days of the initial examination. 8 U.S.C. § 1446(d); 8 C.F.R. § 335.3.  The application is also subject to an "examination" that may include testimony of witnesses in addition to the applicant and production of relevant books, papers, and documents.  8 U.S.C. § 1446(b).  Upon completion of the examination and all background checks, USCIS adjudicates the application. If USCIS denies the application, the alien has the right to seek a hearing before an immigration officer and, if unsuccessful, the right to a *de novo* hearing in district court.  Id. §§ 1421(c), 1447(a).

Congress has charged USCIS with the primary responsibility of processing applications for naturalization. Concerned about potential delay in the process, however, Congress enacted 8 U.S.C. §1447(b), which gives district courts jurisdiction to grant or deny the application. To that end the statute provides:

> If there is a failure to make a [naturalization] determination . . . before the end of the 120-day period after the date on which the examination is conducted . . . , the applicant may apply to the United States district court . . . for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to [USCIS] to determine the matter.

§ 1447(b).

In the motion now before the Court, Defendants argue that Plaintiff's Complaint should be dismissed due to mootness. While agreeing that 8 U.S.C. § 1447(b) vested the district court with jurisdiction upon the filing of the Complaint, Defendants contend that the Court's jurisdiction was not exclusive but concurrent with the jurisdiction of USCIS. Defendants take the position that once the 120-day period has run and the applicant files a petition with the district court, either USCIS or the Court has power to issue a ruling on the naturalization application. In Defendants' view, if USCIS rules first, that ruling acts to divest the district court of jurisdiction. Thus, according to Defendants, the Complaint in this case became moot when USCIS decided the pending application.

Although the Eleventh Circuit has not issued an opinion addressing this issue, other courts have. Several district courts—including some within this district—have interpreted the statute in the manner urged by Defendants. See, e.g., Bello-Camp v. Attorney Gen., No. 8:08-cv-885-T-23TBM, 2009 WL 813146 (M.D. Fla. Mar. 26, 2009) (Merryday, J., adopting

report and recommendation of magistrate judge); Fatayer v. Swacina, No. 2:07-cv-527-FtM-29DNF, 2008 WL 4279688, at *3 (M.D. Fla. Sept. 15, 2008) (Steele, J.); Farah v. Gonzales, No. Civ. 05-1944 DWFAJB, 2006 WL 1116526, at *2 (D. Minn. Apr. 26, 2006). However, appellate courts that have addressed the issue have concluded that § 1447(b) vests district courts with exclusive jurisdiction. See Bustamante v. Napolitano, 582 F.3d 403, 405 (2d Cir. 2009); Etape v. Chertoff, 497 F.3d 379, 383 (4th Cir. 2007); United States v. Hovsepian, 359 F.3d 1144, 1164 (9th Cir. 2004). My own reading of the statute leads me to also conclude that once a district court acquires jurisdiction, that jurisdiction is exclusive.

The interpretation of any statute begins by determining "whether the language at issue has a plain and ambiguous meaning with regard to the particular dispute in the case." Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997). If, after doing so, the meaning of the text is clear, in all but highly exceptional cases the analysis is complete and goes no further. Garcia v. United States, 469 U.S. 70, 75 (1984). The germane part of the text of § 1447(b) provides that the district court "has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to [USCIS] to determine the matter." In short, the statute plainly provides that the district court "has jurisdiction over the matter" and may, if it chooses, relinquish jurisdiction to USCIS.

Notwithstanding this straightforward language, Defendants argue that the statute does not specifically state that the grant of jurisdiction to the district court is exclusive and that in the absence of such specificity the court should not infer that jurisdiction is exclusive. This argument is strained and not persuasive. The statute grants the district court the power to "determine the matter" once the applicant has sought judicial relief. "Determine" means "to

fix conclusively or authoritatively." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 346 (1989). A district court would be unable to determine a matter if the USCIS retained the same power and did so first. Hovsepian, 359 F.3d at 1160. Concurrent jurisdiction over the matter would effectively strip the district court of jurisdiction if the USCIS made a determination after the applicant filed suit. Etape, 497 F.3d at 383. The claim would become moot, nullifying the authority granted by the phrase "determine the matter[.]" Id. at 383 n.2.

Defendants' interpretation is contrary to Congress's grant of power to the courts to carry out its legislative mandate. As other courts have recognized, interpreting the statute to provide concurrent jurisdiction with USCIS would render the "remand" language meaningless. See Hovsepian, 359 F.3d at 1160; Bustamante, 582 F.3d at 406-07; Etape, 497 F.3d at 384. It makes no sense to give the district court the option to remand the matter to USCIS if USCIS never lost authority to decide the application. See Bustamante, 582 F.3d at 407 (citing Etape, 497 F.3d at 384, and Hovsepian, 359 F.3d at 1160).

Some of the courts that have found the jurisdiction of the district court not to be exclusive have focused on the expediency of allowing USCIS to reach its own conclusion without the necessity of court involvement. I disagree. First of all, the claim that this approach would be judicially efficient is tenuous. A court carrying out its responsibility under the statute might well invest time and resources in an effort to reach a correct ruling, only to have the matter removed from its consideration because USCIS eventually elected to make a decision. Moreover, USCIS is not sidelined as Defendants suggest. USCIS may continue to work on the application while the matter is pending before the court and may even reach a tentative decision. Bustamante, 582 F.3d at 408 ("[W]e do not suggest that upon the

applicant's invocation of a district court's Section 1447(b) jurisdiction, USCIS is barred from continuing its consideration of the naturalization application or from reaching a tentative determination."). Relevant information gathered by USCIS may well assist the court in reaching a decision. And, in the case of remand, USCIS may proceed to execute its tentative ruling.

While USCIS has expertise regarding the processing of naturalization applications, that expertise does not require court deference to USCIS. Congress recognized this expertise by giving USCIS the first opportunity to rule on the application. It is hardly unusual for federal courts to decide controversies between parties that have greater expertise than does the court. Obviously, Congress has confidence in the courts' competence to decide such matters—as evidenced by the statutory provision for de novo review by district courts of denials of naturalization applications. 8 U.S.C. § 1421(c). Whether the USCIS advises the court as to what disposition the court should make or the matter is remanded, USCIS's expertise will likely be an important consideration in the ultimate ruling on the application.

As discussed in Bustamante, the statutory scheme providing for exclusive jurisdiction of the district court after a failure of USCIS to timely process applications for naturalization demonstrates a concern with the timely and efficient processing of naturalization applications. Bustamante, 582 F.3d at 410. It "aims to provide USCIS with an incentive to decide applications in a timely fashion or risk losing jurisdiction to decide those applications in the first instance." Id.

Once this court became vested with jurisdiction, it was incumbent on the court to either "determine the matter or remand the matter, with appropriate instructions, to [USCIS]

to determine the matter." 8 U.S.C. § 1447(b). Relinquishment of jurisdiction is a matter that should be considered carefully. Remand should not be automatically ordered; it should be the course of action only when appropriate under the circumstances of the case. See Bustamante, 582 F.3d at 408-09.

In this case, remand is appropriate not because of USCIS expertise but because of the particular circumstances of this case. USCIS has completed the application process and has reached a tentative decision. That decision appears to be based on information USCIS gleaned during its investigation that Plaintiff did not satisfy the good moral character requirement of 8 C.F.R. § 316.10. (See Doc. 11 at 2). Specifically, the investigation determined:

> Plaintiff had been arrested on numerous occasions under his own name and other names and . . . Plaintiff had failed to disclose most of this information and provide relevant information about the arrests. In addition, [USCIS] determined that Plaintiff was on probation when he applied for naturalization in violation of 8 C.F.R. § 316.10(c)(21) [sic].

(Id.).

Defendants represent that USCIS is willing to promptly issue a ruling on Plaintiff's application. Following that ruling, USCIS will allow Plaintiff to present to the agency additional information that he believes will counter tentative findings and establish good moral character. Based on the information presented by Plaintiff, USCIS will then issue a second ruling denying or granting the application. If the application is ultimately denied, Plaintiff retains his right to seek administrative review by filing a Request for Hearing pursuant to 8 U.S.C. § 1447(a). If the administrative procedure is unsuccessful, Plaintiff may

still seek de novo judicial review under 8 U.S.C. § 1421(c).

## Conclusion

USCIS lacked authority to issue a ruling on Plaintiff's naturalization application after Plaintiff filed his Complaint and requested a hearing before this court pursuant to § 1447(b), as described in Bustamante.  At that point, this Court was vested with exclusive jurisdiction, and the decision by USCIS to deny Plaintiff's application for naturalization—reached after this court had jurisdiction—is a nullity.  Accordingly, Defendants' motion (Doc. 11) is **DENIED** insofar as it seeks dismissal on mootness grounds.

The motion (Doc. 11) is, however, **GRANTED** insofar as it requests remand.  This matter is hereby **REMANDED** to USCIS with instructions to make a decision on Plaintiff's naturalization application within fifteen (15) days of entry of this Order.  Thereafter, USCIS shall promptly advise this Court when Plaintiff seeks to present evidence of good character in response to its initial decision or the time to do so expires.  If such evidence is presented, USCIS shall advise this Court of its decision within sixty (60) days of receipt of the evidence. Furthermore, USCIS shall immediately advise this Court should Plaintiff seek administrative review of its ultimate decision on the application or when the time to do so expires.  Finally, if Plaintiff does seek administrative review, USCIS shall advise this Court of the decision on administrative review within ninety (90) days of the administrative hearing.

Plaintiff's Motion for Hearing (Doc. 10) is **DENIED as moot**.

**DONE** and **ORDERED** in Orlando, Florida this 12th day of November, 2009.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record